### 68897. BUSH v. VANGUARD INSURANCE COMPANY.

(324 SE2d 554)

BENHAM, Judge.

Appellant was the pilot/owner of a Beechcraft King Air aircraft which suffered extensive damage in an accident in Columbus, Ohio.

When appellee Vanguard Insurance Company denied coverage of the damaged airplane, appellant filed suit against his insurance agent, Vanguard, and several other insurance companies. This appeal follows the grant of summary judgment to Vanguard.

The controversy centers around a Vanguard insurance policy which covered a Beech Duke aircraft owned by appellant. That policy contains a provision concerning automatic insurance for newly acquired aircraft: "If the Named Insured who is the owner of the aircraft described in this policy acquires ownership of another aircraft of similar type, as defined herein, having a 'Standard' category airworthiness certificate issued by the Federal Aviation Administration during the Policy Period and so notifies the Company within ten days following the date of its acquisition by him, such insurance as is afforded by this Policy applies to such other aircraft as of such acquisition date . . ." The policy defines "similar type" as "single-engine aircraft if single-engine aircraft are insured under the Policy or multi-engine aircraft if multi-engine aircraft are insured under the Policy which are constructed in a manner utilizing the same type of landing gear, the same type of propeller, the same type of engine or engines if multi-engine aircraft (with horsepower of each within 25%), the same type of wing and the same number of seats or less."

Construing the evidence against the movant/defendant, the following scenario unfolds: in late 1981, appellant informed his insurance agent, Carol Cawthon, president of Carol's Aircraft and General Insurance, Inc. ("Carol's") that he was interested in purchasing a King Air plane to replace the insured Beech Duke he owned. Appellant purchased the King Air in Cleveland, Ohio, on January 26, 1982, and Cawthon telephonically confirmed that the aircraft was insured. She also informed the banking institution which financed the purchase that the plane was insured. Several weeks later, on February 16, 1982, appellant was flying the King Air to Ohio and experienced bad weather. The plane struck an antenna when he attempted to land in Mansfield, Ohio; he aborted that landing and flew to Columbus, Ohio, where weather conditions were more favorable. Upon landing there, the nose gear collapsed and the plane was extensively damaged.

Appellant notified Carol's of the incident the following day. After pulling appellant's file, Mrs. Cawthon discovered that the damaged airplane was not insured, due to her daughter/employee's failure to bind the coverage. Feeling obligated to pay for the damage, Mrs. Cawthon paid several small bills; however, when she received the estimate to repair the damage done to the plane, she realized she could not pay that bill. On or about March 26, 1982, she informed appellant of the lack of insurance coverage.

Appellant subsequently sold his Beech Duke plane in April 1982 and sought cancellation of its insurance coverage. By letter, Mrs.

Cawthon asked him to return the original policy in order that she might return it to the underwriters and secure the unearned premium. A week later, Mrs. Cawthon corresponded with appellant's attorney, asking for the immediate execution and return of a lost policy release. Mrs. Cawthon never received an executed lost policy release from appellant or his attorney.

The record is replete with evidence that Mrs. Cawthon was not an agent of Vanguard. When she was deposed, Mrs. Cawthon stated that she was not an employee of any of the insurance companies involved in this lawsuit; she had no relationship with any of the insurance companies; she had no binding authority for any company; she had not received any material containing guidelines for writing insurance from the insurance companies; and her office contained no written material indicating to customers the companies for whom she wrote insurance. In effect, she took the customer's order and history and checked with various insurers to see if any would extend the coverage the customer sought. She would then report her findings to the customer, have him make a decision, and call the underwriter of the insurance company selected by the customer and request that the chosen insurance be written.

An employee of Vanguard's underwriter gave an affidavit in support of Vanguard's motion for summary judgment and stated that neither Vanguard nor its underwriter had any type of express or implied agency relationship with Mrs. Cawthon or Carol's.

The denials of the purported parties of an agency relationship may not be disregarded by the trial court and are sufficient to support a motion for summary judgment. Appellant's pleadings having been pierced, the burden of establishing the fact of agency fell upon him, and he failed to carry that burden. Therefore, summary judgment in favor of Vanguard was appropriate. *Nat. Property &c. Ins. Co. v. Wells*, 166 Ga. App. 281, 283 (304 SE2d 458) (1983).

Vanguard moved for summary judgment, arguing that: the King Air plane was not covered at the time of the accident, because appellant had failed to meet the prerequisite conditions of the automatic coverage for newly acquired aircraft; even if there was coverage, appellant had failed to give timely notice and proof of loss; and appellant had violated the "pilot's clause" by failing to have the requisite number of logged hours. Appellant maintained that genuine issues of material fact existed with regard to each of Vanguard's grounds, and urged that Vanguard's retention of the unearned premium of the Duke insurance policy estopped appellee from asserting the above grounds. After conducting a hearing and considering the entire record, the trial court granted Vanguard's motion for summary judgment.

1. In order for the King Air aircraft to be covered by the Van-

guard policy, the King Air must be an aircraft of "similar type," as that term is defined in the policy, to the Beech Duke aircraft which was the plane insured by the policy. The policy defined "similar type" in terms of the number and type of engines; the type of landing gear; the type of propeller; the type of wing; and the number of seats.

In his response to Vanguard's request for admissions, appellant admitted that "the Duke aircraft utilized a constant speed propeller and a . . . 6 cylinder flat opposed reciprocating internal combustion engine, developing 380 horsepower utilizing gasoline for fuel." He also admitted that the King Air was equipped to carry seven passengers while the Duke could only carry six. In a deposition, appellant agreed that the King Air had a controllable pitch propeller and that a controllable pitch propeller and a constant speed propeller "are two completely different breeds of cat." He also agreed that the King Air used jet fuel while the Duke's engine was fueled by gasoline, and that the King Air had an estimated horsepower of 500 while the Duke engine had 380 horsepower. In an affidavit filed in support of his opposition to Vanguard's motion for summary judgment, appellant stated that the performance levels of the two aircraft were similar; both had pressurized cabins; both had the same type of propeller; and that the horsepower of the two planes could not be directly compared.

The above-summarized evidence establishes the fact that Vanguard proved that the planes were not of a similar type, as that phrase is defined in the insurance policy. Even if we were to accede to appellant's wish and conclude that the policy's definition of "similar type" was ambiguous because the phrase "same type" is undefined, the disparity in the number of seats of the two aircraft is definite enough to preclude coverage of the King Air under the newly acquired aircraft provision of the Vanguard policy.

2. Appellant argues that Vanguard is estopped from raising arguments regarding the insurance policy because Vanguard never sent appellant written notice of cancellation of the policy or the refund of the unearned premium. See OCGA § 33-24-44. However, Mrs. Cawthon, appellant's insurance agent, testified that she never received from appellant or his attorney the papers necessary to process the cancellation and refund. It appears from the record that Vanguard first received notice of appellant's desire to cancel the insurance policy when it was served with process in this lawsuit. Vanguard responded then by tendering the amount of the unearned premium to the trial court, which ordered the clerk's acceptance of the tender.

3. In light of the disposition of appellant's first enumerated error, we need not consider the remaining enumerated errors, which deal with appellant's compliance, or lack thereof, with other provisions of the Vanguard insurance policy.

*Judgment affirmed. Banke, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 21, 1984.

*Steve J. Davis, Maureen M. Middleton, Mary Elizabeth Mann,* for appellant.

*Glover McGhee, W. Meade Burns, Jr., Paul M. Hawkins, Stephen M. Kiser,* for appellee.